1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                     FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    CARLOS MARTINEZ,                        No.  1:21-cv-00146-EPG (PC)

12                 Plaintiff,                 SCREENING ORDER

13           v.                               FINDINGS AND RECOMMENDATIONS,
                                              RECOMMENDING DISMISSING
14    DEBORAH SAN JUAN, et al.,               PLAINTIFF'S COMPLAINT WITHOUT
                                              LEAVE TO AMEND
15                 Defendants.
                                              TWENTY-ONE-DAY DEADLINE
16
                                              ORDER DIRECTING CLERK OF COURT TO
17                                            ASSIGN DISTRICT JUDGE

18

19           Plaintiff Carlos Martinez ("Plaintiff") is a state inmate proceeding *pro se* and *in forma*

20    *pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff filed the Complaint

21    commencing this action on February 5, 2021. (ECF No. 1). The Court screened the complaint on

22    March 23, 2021, found Plaintiff failed to state any claims, and provided legal standards. (ECF No.

23    7). On April 23, 2021, Plaintiff filed a first amended complaint ("FAC"), which is now before the

24    Court for screening. (ECF No. 8). The FAC brings claims against Deborah San Juan and Vijai

25    Desai, who were on the Plaintiff's parole board, along with the California Board of Parole

26    Hearings ("Defendants"), concerning Plaintiff's being denied parole. The Court finds that the

27    FAC fails to state any cognizable claims and recommends dismissing the FAC without leave to

28    amend.

                                                 1

1    Plaintiff has 21 days from the date of service of this order to file objections to these

2    findings and recommendations.

3    **I.      SCREENING REQUIREMENT**

4        The Court is required to screen complaints brought by inmates seeking relief against a

5    governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The

6    Court must dismiss a complaint or portion thereof if the inmate has raised claims that are legally

7    "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek

8    monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2).

9    As Plaintiff is proceeding *in forma pauperis*, the Court may also screen the complaint under 28

10   U.S.C. § 1915. "Notwithstanding any filing fee, or any portion thereof, that may have been paid,

11   the court shall dismiss the case at any time if the court determines that the action or appeal fails to

12   state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

13       A complaint is required to contain "a short and plain statement of the claim showing that

14   the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not

15   required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere

16   conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell

17   Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual

18   matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting

19   *Twombly*, 550 U.S. at 570). The mere possibility of misconduct falls short of meeting this

20   plausibility standard. *Id.* at 679. While a plaintiff's allegations are taken as true, courts "are not

21   required to indulge unwarranted inferences." *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681

22   (9th Cir. 2009) (citation and quotation marks omitted). Additionally, a plaintiff's legal

23   conclusions are not accepted as true. *Iqbal*, 556 U.S. at 678.

24       Pleadings of *pro se* plaintiffs "must be held to less stringent standards than formal

25   pleadings drafted by lawyers." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (holding that

26   pro se complaints should continue to be liberally construed after *Iqbal*).

27       "A statement in a pleading may be adopted by reference elsewhere in the same pleading or

28   in any other pleading or motion. A copy of a written instrument that is an exhibit to a pleading is

a part of the pleading for all purposes." Fed. R. Civ. P. 10(c). Thus, when a transcript or other exhibits contradicts the terms of a pleading, the transcript prevails. *See Polzin v. Gage*, 636 F.3d 834, 838 (7th Cir. 2011) ("Mr. Polzin's exhibits are part of his complaint. Fed.R.Civ.P. 10(c). Because these attached exhibits [namely, court transcripts] contradict his claims, the district court was entitled to rely on them in dismissing the allegations against the court reporter [at screening]."); *Avila v. Cate*, No. 1:10-CV-01208 JLT, 2011 WL 2680844, at *5 (E.D. Cal. July 8, 2011) ("When an attached exhibit contradicts the allegations in the pleadings, the contents of the exhibits trump the pleadings." (citing, *inter alia*, *Crenshaw v. Lister,* 556 F.3d 1283, 2009 WL 279812 at *7 (11th Cir. 2009))); *Gill as Next Friend of K.C.R. v. Judd*, 941 F.3d 504, 511 (11th Cir. 2019) ("[A] litigant may be defeated by his own evidence, the pleader by his own exhibits when he has pleaded too much and has refuted his own allegations by setting forth the evidence relied on to sustain them.").

## II.      ALLEGATIONS IN THE FIRST AMENDED COMPLAINT

The FAC alleges as follows:

### A.      Allegations in Body of Complaint

On October 13, 2021, Defendant Deborah San Juan held a parole hearing for Plaintiff. Defendant San Juan took Plaintiff's mental-health evaluation and substance-abuse history into account as evidence to support a finding that Plaintiff would pose an unreasonable risk to the public safety if released. Defendant San Juan failed to weigh these findings against other favorable factors, including Plaintiff's lack of overt violence during the last 11 years, his disciplinary history, his increased level of maturity and insight, his participation in substance abuse recovery, and his age. Defendant San Juan concluded that Plaintiff requires more mental-health and substance-abuse treatment and therefore denied parole.

Plaintiff has been treated for mental-health issues since 2007 without violence and has been attending substance-abuse class for several years, without using drugs since 1996. Defendant San Juan's bare assertions do not support her finding of current or future dangerousness.

///

3

1    Defendant San Juan also failed to apply statutorily mandated criteria in determining

2    Plaintiff's eligibility for parole. Defendant San Juan was required to grant Plaintiff parole unless

3    certain enumerated reasons exist. Defendant San Juan did not address the enumerated reasons.

4        The same rationales apply to Defendant Vijai Desai because he concurred in Defendant

5    San Juan's opinion.

6        Defendants San Juan and Desai's conduct is shown to be "motivated by evil motive, intent

7    and involves deliberate, reckless, and callous indifference to plaintiff's constitutional rights."

8        Plaintiff suffers from schizophrenia and has a history of substance abuse. These are

9    disabilities. Plaintiff's parole was denied because of his disabilities:

10       Plaintiff seeks damages and an order for a new parole hearing.

11   **B.      Plaintiff's Parole Hearing**

12       Plaintiff attaches a copy of his October 13, 2020 parole hearing transcript.

13       According to that transcript, Defendants San Juan and Desai attended as presiding

14   commissioner and deputy commissioner, respectively. Also present at the hearing were Plaintiff,

15   Plaintiff's attorney, an interpreter, a deputy district attorney, and a correctional officer. The

16   proceeding lasted from 9:58 am until 12:26 pm, with three breaks.

17       Defendants San Juan and Desai interviewed Plaintiff. They asked Plaintiff about his life

18   history; Plaintiff's childhood and familial relations; his past drug use and his rehabilitation

19   efforts; his mental health; his criminal record; his record of unauthorized entries into the United

20   States; and his activities in prison. The deputy district attorney was offered the opportunity to ask

21   questions but declined to do so. Plaintiff's attorney also interviewed Plaintiff and elicited

22   testimony from him. The deputy district attorney, Plaintiff's attorney, and Plaintiff made closing

23   statements.

24       Then Defendant San Juan announced the decision of the parole board: "based on the legal

25   standards and evidence considered, we find that you continue to pose an unreasonable risk to

26   public safety and therefore you are not suitable for parole." (*Id.* at 59). Defendant San Juan told

27   Plaintiff the "mitigating factors or the good things" that the board considered. Those mitigating

28   factors included that "your comprehensive risk assessment, um, does not identify factors that

4

remain relevant;" "that you have participated in all EOP programming;" that "you've been involved in LTOP, Spanish lifers' group and criminal thinking;" that "[y]ou've also been involved with AA and NA;" and that "[y]ou are definitely beginning to change and you're not, you're no longer the same criminal oriented person that you were when you came to prison."

Plaintiff's aggravating factors include that Plaintiff "received the moderate risk for future violence on the comprehensive risk assessment;" that "[d]espite a limited history of violent behavior and disciplinary free since 2009, the clinician identified several areas of concern during the current evaluation that serve to elevate his risk for violence;" that "[d]espite his sobriety in 2007 he minimized the implications of his substance abuse and his relapse prevent plan remains undeveloped;" that Plaintiff "continues to present with psychiatric instability with slow response to treatment," which "suggests increased likelihood to become paranoid and responded or auditory hallucinations in a potentially disruptive manner," (as in original); that with respect to Plaintiff's "housing, employment, and support his plans remain vague;" Plaintiff's was "being evasive;" and that Plaintiff's "criminal and parole history" includes multiple offenses and deportations and it is likely Plaintiff committed other burglaries for which he was not caught.

Defendant San Juan also noted additional issues with Plaintiff's mental health and substance-abuse problems: Plaintiff's "recent behavior stability within a highly structured environment provide in EOP … does not serve as an appropriate comparison to how he will conduct himself in the freezer community," (as in original); that Plaintiff lacked a sufficient plan for how he will obtain mental-health and substance-abuse treatment outside of prison; and that Plaintiff "has presented with active symptoms of a major mental disorder in the past three years which has contributed to significant and some instability in his mood," including "Depression and anxiety, behaviors such as self-harm isolation and avoidance and cognition such as paranoid ideations." Such "symptoms persist without adequate insight into the complexity of his symptom presentation."

**III.    SECTION 1983**

The Civil Rights Act under which this action was filed provides:

*///*

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

42 U.S.C. § 1983. "[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979*)); see also Chapman v. Houston Welfare Rights Org*., 441 U.S. 600, 618 (1979); *Hall v. City of Los Angeles*, 697 F.3d 1059, 1068 (9th Cir. 2012); *Crowley v. Nevada*, 678 F.3d 730, 734 (9th Cir. 2012); *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006).

To state a claim under § 1983, a plaintiff must allege that (1) the defendant acted under color of state law, and (2) the defendant deprived him of rights secured by the Constitution or federal law. *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006); *see also Marsh v. Cnty. of San Diego*, 680 F.3d 1148, 1158 (9th Cir. 2012) (discussing "under color of state law"). A person deprives another of a constitutional right, "within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'" *Preschooler II v. Clark Cnty. Sch. Bd. of Trs*., 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978)). "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." *Preschooler II*, 479 F.3d at 1183 (quoting *Johnson*, 588 F.2d at 743). This standard of causation "closely resembles the standard 'foreseeability' formulation of proximate cause." *Arnold v. Int'l Bus. Mach. Corp.*, 637 F.2d 1350, 1355 (9th Cir. 1981); *see also Harper v. City of Los Angeles*, 533 F.3d 1010, 1026 (9th Cir. 2008).

Additionally, a plaintiff must demonstrate that each named defendant personally participated in the deprivation of his rights. *Iqbal*, 556 U.S. at 676-77. In other words, there must

6

1 be an actual connection or link between the actions of the defendants and the deprivation alleged

2 to have been suffered by Plaintiff. *See Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S.

3 658, 691, 695 (1978).

4 **IV. ANALYSIS OF PLAINTIFF'S CLAIMS**

5   **A. Fourteenth Amendment**

6   "There is no right under the Federal Constitution to be conditionally released before the

7 expiration of a valid sentence, and the States are under no duty to offer parole to their prisoners.

8 When, however, a State creates a liberty interest, the Due Process Clause requires fair procedures

9 for its vindication—and federal courts will review the application of those constitutionally

10 required procedures." *Swarthout v. Cooke*, 562 U.S. 216, 220 (2011) (citation omitted).

11   Under the Due Process Clause, the standard analysis "proceeds in two steps: We first ask

12 whether there exists a liberty or property interest of which a person has been deprived, and if so

13 we ask whether the procedures followed by the State were constitutionally sufficient." *Id.* at 219.

14 "The liberty interest at issue here is the interest in receiving parole when the California standards

15 for parole have been met…." *Id.* at 221. As to what procedures are required, "[i]n the context of

16 parole, [the Supreme Court has] held that the procedures required are minimal." *Id.* at 220. All

17 that is required is an opportunity to be heard and a statement of reasons why parole was denied.

18 *Id.*; *see also Miller v. Oregon Bd. of Parole & Post Prison Supervision*, 642 F.3d 711, 716 (9th

19 Cir. 2011) ("The Supreme Court held in *Cooke* that in the context of parole eligibility decisions

20 the due process right is *procedural*, and entitles a prisoner to nothing more than a fair hearing and

21 a statement of reasons for a parole board's decision…."). Thus, "a mere error of state law is not a

22 denial of due process" when reviewing a parole board's decision, and it is an error for federal

23 courts to determine whether state courts correctly decide parole cases. *Cooke*, 562 U.S. at 221-22.

24   However, "[b]ecause parole board officials perform tasks that are functionally comparable

25 to those performed by the judiciary, they owe the same duty[] to render impartial decisions in

26 cases and controversies that excite strong feelings because the litigant's liberty is at stake."

27 *O'Bremski v. Maass*, 915 F.2d 418, 422 (9th Cir. 1990) (citation and internal quotation marks

28 omitted). A prisoner is entitled to have his parole hearings conducted by a parole board that is

"free from bias or prejudice." *Id.* "There are two ways in which a plaintiff may establish that he has been denied his constitutional right to a fair hearing before an impartial tribunal. In some cases, the proceedings and surrounding circumstances may demonstrate actual bias on the part of the adjudicator. In other cases, the adjudicator's pecuniary or personal interest in the outcome of the proceedings may create an appearance of partiality that violates due process, even without any showing of actual bias." *Stivers v. Pierce*, 71 F.3d 732, 741 (9th Cir. 1995) (citations omitted).

At the outset, the Court notes that some of Plaintiff's factual allegations are contradicted by the transcript he attaches. Plaintiff alleges that Defendant San Juan used Plaintiff's mental-health evaluation substance-abuse history as reasons to deny parole but "failed to weigh[] [those reasons] against other favorable factors, which are the lack overt violence during the last eleven years of incarceration, his being disciplinary free for the last eleven years, and increased level of maturity and insight, his participation in substance abuse recovery for several years, his participation in self help and his being older and more mature[.]" (ECF No. 8 at 4). However, as shown in the transcript, Defendant San Juan noted Plaintiff's "limited history of violent behavior and [his being] disciplinary free since 2009" when issuing the decision. (*Id.* at 61). Moreover, Defendant San Juan found, as a mitigating factor, "that you have participated in all EOP programming, … LTOP, Spanish lifers' group and criminal thinking. You've also been involved with AA and NA." (*Id.* at 60). Defendant San Juan also noted that "You are definitely beginning to change and you're not, you're no longer the same criminal oriented person that you were when you came to prison." (*Id.*). Thus, Defendant San Juan discussed the exact issues Plaintiff alleges Defendants ignored.

Next, Plaintiff contends that Defendants' failure to review Plaintiff's mitigating factors violates California Penal Code section 3041(b). The California Penal Code is not a federal constitutional or statutory right. The Due Process Clause is concerned with whether Plaintiff's federal constitutional rights were violated; "a mere error of state law is not a denial of due process." *Cooke*, 562 U.S. at 222. Instead, the Court must consider whether Plaintiff was heard at the hearing and whether he received a statement of the reasons he was denied parole. *See id.* at 220 ("[A] prisoner subject to a parole statute similar to California's receive[s] adequate process

when he was allowed an opportunity to be heard and was provided a statement of the reasons why parole was denied.").

Here, Plaintiff was allowed an opportunity to be heard. Defendants San Juan and Desai asked Plaintiff questions, and he was able to answer through an interpreter. Plaintiff had an attorney present, who also examined Plaintiff. (*Id.* at 49-53). Plaintiff and his attorney both made closing statements. (*Id.* at 54-58). Plaintiff also received a statement of the reasons why parole was denied. Defendant San Juan explained the decision at the hearing, and Plaintiff has a copy of the transcript. (*Id.* at 59-66). Because Plaintiff had an opportunity to be heard and received a statement of the reasons for the parole board's decision, due process is satisfied. *See Cooke*, 562 U.S. at 220-21.

Additionally, Plaintiff has not adequately alleged that any Defendant was actually biased or had a pecuniary interest in the outcome of the proceeding. *See Stivers*, 71 F.3d at 741 (describing the two ways to establish violation of right to a fair hearing before an impartial tribunal). Thus, the FAC fails to state a Fourteenth Amendment claim in connection with Plaintiff's right to a fair hearing before an impartial tribunal.

### B. Cruel and Unusual Punishment

Plaintiff contends that Defendants San Juan and Desai's denial of parole was cruel and unusual punishment, in violation of the Eighth Amendment. Specifically, Plaintiff alleges those defendants knew that they did not have enough evidence to deny Plaintiff with parole yet "denied parole anyway with the deliberate indifference with the intention to inflict mental and physical pain upon Plaintiff," and that Plaintiff subsequently suffered such pain. (ECF No. 8 at 6).

Plaintiff fails to allege a violation of the Eighth Amendment. Plaintiff does not allege the length of his sentence is cruel and unusual. Nor could Plaintiff challenge the length or duration of his sentence in this § 1983 action. *See Wilkinson v. Dotson,* 544 U.S. 74, 81–82 (2005) ("[A] state prisoner's § 1983 action is barred (absent prior invalidation)-no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)-*if* success in that action would necessarily demonstrate the invalidity of confinement or its duration.").

1    Moreover, "[a]n inmate's disappointment caused by additional months of incarceration

2    before his parole is not a violation of the Eighth Amendment." *Gomez v. Oregon State Bd. of*

3    *Parole*, 9 F.3d 1551, 1993 WL 460673, at *1 (9th Cir. 1993) (table, unreported) (citing *Baumann*

4    *v. Arizona Dep't of Corr.*, 754 F.2d 841, 846 (9th Cir. 1985)); *Baumann*, 754 F.2d at 846

5    ("Baumann argues that the emotional trauma and financial injury caused by the denial of

6    anticipated work release, along with the additional nine months of incarceration before his parole,

7    was 'torture' forbidden by the Eighth Amendment. His disappointment does not offend the

8    standards of decency in modern society."); *Wilson v. Maass*, 979 F.2d 857, 1992 WL 344789, at

9    *4 (9th Cir. 1992) (table, unreported) ("Wilson's claim is simply that the Board's failure to grant

10   parole was in itself cruel and unusual. However, he cites no authority for that proposition, and in

11   this case there does not appear to be any reason to subject the Board's decision to an analysis

12   separate from analysis of the sentence itself." (citing *Baumann* at 846)). Thus, courts dismiss such

13   Eighth Amendment challenges to parole denials. *McGhee v. Diaz*, 2020 WL 4747911, at *3 (N.D.

14   Cal. Aug. 17, 2020) ("The complaint also fails to state a cognizable Eighth Amendment claim.

15   The treatment a prisoner receives in prison and the conditions under which he is confined are

16   subject to scrutiny under the Eighth Amendment. *See Helling v. McKinney*, 509 U.S. 25, 31

17   (1993). Plaintiff is not challenging the conditions of his confinement. He is challenging the failure

18   to refer him for parole consideration.").

19       **C.      Americans with Disabilities Act**

20       Plaintiff alleges that the California Board of Parole hearings "unlawfully discriminated

21   against him given that the only reason proffered for excluding him from the parole program was

22   his disabilities and thus violated the American[s] with Disabilities Act." (ECF No. 8 at 7).

23       "To establish a violation of Title II of the ADA, a plaintiff must show that (1) [he] is a

24   qualified individual with a disability; (2) [he] was excluded from participation in or otherwise

25   discriminated against with regard to a public entity's services, programs, or activities; and (3)

26   such exclusion or discrimination was by reason of [his] disability." *Lovell v. Chandler*, 303 F.3d

27   1039, 1052 (9th Cir. 2002).

28   ///

1    However,

2        Title II does not categorically bar a state parole board from making an
3        individualized assessment of the future dangerousness of an inmate by taking
         into account the inmate's disability. Title II only prohibits discrimination
4        against "qualified" people with disabilities. 42 U.S.C. § 12131 (defining a
         qualified person with a disability as a person who "meets the essential
5        eligibility requirements for the receipt of services"). A person's disability that
         leads one to a propensity to commit crime may certainly be relevant in
6        assessing whether that individual is qualified for parole. In addition, the
         parole board might show that legitimate penological interests justify
7        consideration of an inmate's disability status beyond that appropriate in other
         settings. *See Gates v. Rowland*, 39 F.3d 1439, 1447 (9th Cir.1994). The
8        parole board claims to have and undeniably does have legitimate penological
         interests in considering the plaintiffs' substance abuse backgrounds during the
9        individualized inquiry for parole suitability.

10

11   *Thompson*, 295 F.3d at 898 n. 4. "Consequently, courts routinely reject ADA claims where a

12   parole board factors in a prisoner's disability in assessing a prisoner's future dangerousness."

13   *Dawson v. Martel*, 2018 WL 5869636, at *3 (C.D. Cal. Aug. 20, 2018), *report and*

14   *recommendation adopted*, 2019 WL 934974 (C.D. Cal. Feb. 26, 2019).

15       Although Plaintiff characterizes the rationale as being solely based on his substance-abuse

16   and mental-health history, in fact, Defendant San Juan provided multiple other reasons separate

17   from his disabilities for denying him parole. For instance, Defendant San Juan described Plaintiff

18   as "being evasive" when asked about his criminal history and did "not believe [Plaintiff was]

19   giving us the whole story." (ECF No. 8 at 62). Defendant San Juan also relied on Plaintiff's

20   criminal and parole history; his history of repeated unauthorized entries into the United States; his

21   "self-control;" and his "institutional behavior," including rule-violations for violence in 2009 and

22   2011. (*Id.* at 63). Defendant San Juan also described Plaintiff as "manipulative" and "callous

23   towards others." (*Id.*).

24       In addition, Defendant San Juan identified particular penological interests that justified

25   considering Plaintiff's disability status. With respect to his substance-abuse history, Defendant

26   San Juan noted that Plaintiff "minimized the implications of his substance use and his relapse

27   prevention plan remains undeveloped." (ECF No. 8 at 61). As to Plaintiff's plan, Defendant San

28   Juan stated that Plaintiff needed "to work further on [Plaintiff's] plans for Mexico and how

11

1  [Plaintiff] will get mental health treatment and substance abuse treatment in Mexico." (*Id.* at 63-

2  64).

3  　　　　With respect to Plaintiff's mental-health problems, Defendant San Juan found that

4  Plaintiff's psychiatric instability had a slow response to treatment. (*Id.* at 61). This "suggests

5  increased likelihood to become paranoid and responded or auditory hallucinations in a potentially

6  disruptive manner," particularly because it had been suggested that Plaintiff's "symptoms of a

7  major mental disorder contributed to his acts of violence as he was and remains paranoid around

8  others." (*Id.* at 61-62) (as in original).

9  　　　　Thus, Defendants conducted an individualized assessment of Plaintiff and his disabilities,

10  as required by *Thompson*. Accordingly, Plaintiff fails to state a claim under the Americans with

11  Disabilities Act. *See Anderson v. Schwartz*, 2006 WL 2472210, at *12 (N.D. Cal. Aug. 24,

12  2006), *aff'd*, 385 F. App'x 621 (9th Cir. 2010) ("Petitioner's mental illness, especially when

13  combined with questionable parole plans that failed to establish concretely Petitioner's ability to

14  obtain and participate in counseling, support groups, and assistance with medication, was a

15  legitimate factor for the Board to take under consideration."); *Eccher v. Mendoza-Powers*, 2007

16  WL 867985, at *15 (E.D. Cal. Mar. 20, 2007), *report and recommendation adopted*, 2007 WL

17  1302490 (E.D. Cal. May 3, 2007) ("Here, petitioner was not categorically denied parole based on

18  his history of substance abuse but, as described above, was afforded an individualized assessment

19  of his suitability for parole. Petitioner's past history of substance abuse was a legitimate factor for

20  the Board to take under consideration, along with other factors, in determining whether he was

21  suitable for release on parole."); *Williams v. Harris*, 2014 WL 791797, at *4 (C.D. Cal. Feb. 26,

22  2014) ("A review of [the parole hearing transcript] discloses that the Board did not deny

23  Plaintiff's petition for parole solely based on his mental health disability. Rather, the Board

24  reached its conclusion based upon an individualized inquiry regarding Plaintiff's suitability for

25  parole, which considered, in addition to his mental health, Plaintiff's record of misconduct while

26  incarcerated, his failure to take responsibility for such conduct, and his failure to take advantage

27  of self-help programming opportunities within CDCR. Moreover, the Board's consideration of

28  Plaintiff's mental health was focused squarely on his propensity for violence should he be

12

released. In sum, the hearing record renders Plaintiff's ADA claim under *Thompson* implausible."
(citations omitted)).

## V.     CONCLUSION AND ORDER

The Court has screened the FAC and finds that it fails to state any cognizable claims. The Court has previously provided legal standards to Plaintiff when granting leave to amend. (ECF No. 7). The Court finds that further amendments would be futile.

For the foregoing reasons, it is HEREBY RECOMMENDED that:

1) Plaintiff's first amended complaint be dismissed, without further leave to amend; and

2) The Clerk of Court be directed to close this case.

These findings and recommendations will be submitted to the United States district judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within twenty-one (21) days after being served with these findings and recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

In addition, the Clerk of Court is respectfully directed to assign a district judge to this action.

IT IS SO ORDERED.

Dated:   **May 6, 2021**                        /s/ *Erica P. Grosjean*
                                                 UNITED STATES MAGISTRATE JUDGE